IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO HERNANDEZ AND MARIA HERNANDEZ,<br><br>    Plaintiffs,<br><br>  v.<br><br>HILLTOP FINANCIAL MORTGAGE, INC., FIELDSTONE MORTGAGE COMPANY CO., COUNTRYWIDE HOME LOANS, INC., AND AMERIQUEST MORTGAGE CO.,<br><br>    Defendants.<br>                                     / | No. C 06-7401 SI<br><br>**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM AND GRANTING AMERIQUEST'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

On October 3, 2007, the Court heard argument on defendants' motion to dismiss for failure to state a claim and on defendant Ameriquest's motion to dismiss for lack of subject matter jurisdiction. Having considered the arguments of counsel and the papers submitted, the Court hereby DENIES defendants' motion to dismiss for failure to state a claim and GRANTS Ameriquest's motion to dismiss for lack of subject matter jurisdiction.

**BACKGROUND**

This action arises from two mortgage loans received by plaintiffs Sergio and Maria Hernandez.[1] Each loan transaction took place with different companies. However, both situations share similar circumstances: all discussions with plaintiffs took place in Spanish, plaintiffs received and executed

---

[1] The Court takes the following factual background largely from the First Amended Complaint ("FAC"), the allegations of which must be taken as true at this stage. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

documents solely in English without an interpreter present, and the English documents allegedly contained misrepresentations of the terms agreed to during negotiations.

Plaintiffs first refinanced with defendant Ameriquest Mortgage Company on January 9, 2004. As plaintiffs speak limited English, all negotiations regarding the refinance were done in Spanish. Ameriquest's employee assured plaintiffs that their monthly payment of $1,384.98 included property taxes and property insurance premiums. Later, at the Hernandez home and just before plaintiffs executed the loan documents, a notary public, hired by Ameriquest, again assured plaintiffs that the payments included property taxes and property insurance premiums. Plaintiffs then executed the loan documents, which were all in English. Ameriquest did not provide plaintiffs with versions translated in Spanish. Unable to read English, plaintiffs did not realize that the papers detailed that their monthly payment of $1,384.98 only included principal and interest, not property taxes and property insurance premiums.

Burdened by the added costs of these taxes and insurance premiums, plaintiffs began discussions in December 2004 with defendant Hilltop Financial Mortgage Company about refinancing their Ameriquest loan. Plaintiffs conducted discussions with Hilltop's agent Edward Salem primarily in Spanish. Mr. Salem told plaintiffs that refinancing with Hilltop would cost approximately $120 more per month, but it would include property taxes and property insurance premiums and do so at a less expensive rate than they were currently paying. He made the additional promise that the loan would pay off about $4,000 in consumer debt and give them $10,000 in cash. On or about February 11, 2005, plaintiffs executed the Hilltop loan documents. Plaintiffs were again provided with documents completely in English and did not bring nor did Hilltop provide an interpreter. Among the loan documents, Hilltop gave each plaintiff a "Notice of Right to Cancel" form. The document required that dates be filled in at the end of the following two sentences: (1) "If you cancel by mail or telegram, you must send the notice no later than midnight of _____" and (2) "I received **Notice of Right to Cancel** in Duplicate this Date _____, _____." (emphasis in original). In copies eventually sent to plaintiffs and in copies obtained by plaintiffs from the escrow agent for the loan, both notices were left

blank in the space requiring the date.[2]

In or about March, 2005, plaintiffs learned that their higher monthly payments ($1,508.42 compared to $1,384.98 per month under the Ameriquest loan) did not in fact cover property taxes and property insurance premiums despite the assurances received from Mr. Salem.  Instead, defendant Fieldstone[3] wanted an additional $350 for property taxes and property insurance premiums (the same amount plaintiffs had previously been paying).  Additionally, the Hilltop/Fieldstone loan only paid $1,323.00 in consumer debt (as opposed to the promised $4,000) and plaintiffs received a cash payment of only $4,046.15 (as opposed to the promised $10,000 cash payment).  On or about April 1, 2005, Fieldstone assigned its rights in the loan to defendant Countrywide.  Plaintiffs believe Countrywide assigned partial interest in the Hilltop/Fieldstone loan to an investor who now along with Countrywide are the current assignees of the loan.

On November 7, 2005, plaintiffs sent Countrywide their notice of rescission.  Defendants allegedly received the notice on November 9, 2005.  Twenty-three days later, on December 2, 2005, Countrywide faxed plaintiffs a letter denying plaintiffs' notice of rescission.  On December 1, 2006, plaintiffs filed this complaint and, on May 21, 2007, they filed their First Amended Complaint ("FAC").

## LEGAL STANDARD

**I.  Failure to state a claim upon which relief can be granted**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and

---

[2] Plaintiffs allege Hilltop, Fieldstone, Countrywide or an agent subsequently doctored the Notice of Right to Cancel forms by writing in the missing dates.  FAC ¶ 39; *See* Exhibit H.

[3] After escrow closed on or about February 2005, Hilltop assigned its rights in the loan to defendant Fieldstone.

3

1 must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## II.  Subject matter jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the jurisdiction over the subject matter of the complaint. The party invoking the jurisdiction bears the burden of establishing that the Court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376-78 (1994). Under this standard, all factual allegations pled by the plaintiff must be accepted as true and construed in the light most favorable to the plaintiff. *See NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1984).

If subject matter jurisdiction exists over one or more claims, a federal court may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. A district court has discretion to hear such claims "where there is a substantial federal claim arising out of a common nucleus of operative fact." *Hoeck v. City of Portland*, 57 F.3d 781, 785 (9th Cir. 1995). If "state issues substantially predominate, . . . the state claims may be dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966).

**DISCUSSION**

Plaintiffs bring nine causes of action based on alleged unfair trade practices and

4

misrepresentations made when plaintiffs refinanced their mortgage loan on two occasions, first with defendant Ameriquest and then with defendant Hilltop, who subsequently assigned its loan rights to defendant Fieldstone, and then Fieldstone to defendant Countrywide. Plaintiffs' first claim alleges a violation of the Truth in Lending Act ("TILA"). Their second claim is for violations of the California Translation Act ("CTA"). Their third and fourth claims allege violations of the California Consumer Legal Remedies Act ("CLRA"). The remaining claims are for violations of various state laws and a common law fraud claim. Plaintiffs do not allege each of their nine claims against all four defendants.

Of the nine causes of action, each defendant moves to dismiss certain claims alleged against it. Defendant Countrywide moves to dismiss the TILA, CTA, and fraud claims for failure to state a claim. Defendants Hilltop and Fieldstone move to dismiss the CLRA claim for failure to state a claim. Finally, defendant Ameriquest seeks to dismiss all claims against it – alleged violations of the CLRA, California Business and Professions Code, and a fraud claim – for lack of subject matter jurisdiction.

For the following reasons, the Court DENIES the motions to dismiss filed by defendants Hilltop, Fieldstone, and Countrywide, and GRANTS Ameriquest's motion to dismiss for lack of subject matter jurisdiction.

**I.      Motion to dismiss plaintiffs' claim under the Truth in Lending Act**

Defendant Countrywide argues plaintiffs' TILA claim should be dismissed for two reasons: (1) plaintiffs failed to file their complaint within TILA's one year statute of limitations pursuant to 15 U.S.C. § 1640(e); and (2) plaintiffs failed to make an offer to tender in their notice of rescission.

**A.      Statute of limitations**

Defendant Countrywide moves to dismiss plaintiffs' TILA claim as untimely. When a plaintiff seeks damages for violations of § 1635, as is the case here, the statute of limitations for bringing the claim is "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The Ninth Circuit has yet to rule on when the one year statute of limitations begins to run if a creditor fails to return a borrower's money or property within the twenty days required by § 1635(b). Defendant argues that the violation took place on November 29, 2005 when it failed to return plaintiffs' payments within

5

twenty days of receiving the notice of rescission. The Court finds this interpretation sensible because otherwise no consistent and discernable date could alert parties that a violation occurred and the statute of limitations has begun to run.

Given the above analysis and conclusion, plaintiffs filed their complaint two days late by waiting until December 1, 2006 to file. However, factual circumstances, fairness principles, and an effort to effectuate the congressional purposes of TILA warrant an equitable tolling of the statute of limitations. *See King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986) ("The Supreme Court has repeatedly applied equitable tolling to statutes of limitations to prevent unjust results or to maintain the integrity of a statute.") (citations omitted); *Williams v. Public Finance Corp.*, 598 F.2d 349, 357 (5th Cir. 1979) (stating "[t]he purpose of according borrowers a right of rescission [under § 1635 is it] serves to blunt unscrupulous sales tactics by giving homeowners a means to unburden themselves of security interests exacted by such tactics."). No statutory language or clear case law existed to sufficiently put plaintiffs on notice that the statute of limitations began running at the conclusion of the twentieth day, November 29, 2005. Plaintiffs interpreted the date of violation to be December 2, 2005, the day they received defendant's letter informing them that defendant would not honor their right to rescission. Plaintiffs' interpretation is evidenced by the filing of their complaint on December 1, 2006, just a day before the statute of limitations would have barred their complaint had December 2 been the date of the occurrence of the violation. Thus, in the absence of clear authority dictating when the statute of limitations begins to run when seeking damages under § 1635(b) and to effectuate the purposes of TILA, the Court finds the statute of limitations should be tolled for two days given the facts here and plaintiffs' complaint allowed to proceed.

### B.     Offer to tender in the notice of rescission under TILA

Defendant Countrywide argues that plaintiffs' claim for rescission under TILA fails as a matter of law because plaintiffs did not tender, or make an offer to tender, the loan proceeds to defendant in plaintiffs' notice of rescission. However, no language in the statute or regulations requires the consumer to tender or make an offer to tender the loan proceeds in his notice of rescission to the creditor. *See* 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(a)(2). TILA's Regulation Z, which tracks § 1635, states only that

6

1  "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail,
2  telegram or other means of communication." *See* 12 C.F.R. § 226.23(a)(2). Furthermore, in accordance
3  with 12 C.F.R. § 226.23(b)(2), a creditor must alert the borrower of his right to rescind by supplying the
4  borrower with a notice to cancel form. *See* 12 C.F.R. § 226.23(b)(2), Appendix H-8. That model form
5  requires the consumer to include nothing more than his signature, date, and the statement, "I wish to
6  cancel." *Id.* It does not place an obligation on the borrower to tender the loan proceeds. Additionally,
7  defendant cites no case law requiring a consumer to include in his notice of rescission an offer to tender.
8  All cases cited by defendant support the proposition that a court may alter the parties' obligations once
9  the notice of rescission has been effected rather than alter the requirements a notice must contain.[4] Thus,
10 the Court concludes that plaintiffs had no obligation to tender or make an offer to tender the loan
11 proceeds in their notice of rescission.[5]

### II. Motion to dismiss plaintiffs' claim under the California Consumer Legal Remedies Act

Defendants Hilltop and Fieldstone move to dismiss plaintiffs' CLRA claim on the following grounds: (1) the CLRA does not apply to a mortgage loan because the loan is not a "service" as defined by the Act; and (2) plaintiffs failed to allege sufficient facts to demonstrate they met the notice and demand requirements of the CLRA.

---

[4] A district court has the discretion to modify the sequence events of rescission in the procedural steps that follow the notice of rescission. *See* 12 C.F.R. § 226.23(d)(4); *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003) (finding that the sequence of rescission procedures may be altered by the court).

[5] Defendant Countrywide also contends that rescission is not available as a remedy because plaintiffs do not have the ability to tender the loan proceeds. This argument is misplaced at this stage for 12(b)(6) purposes. The cases cited by defendant to support this proposition all dealt with litigation at the summary judgment stage and, thus, after parties participated in discovery. *See Am. Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 818 (4th Cir. 2007); *Powers v. Sims & Levin*, 542 F.2d 1216, 1220 (4th Cir. 1976). If appropriate, defendant may renew this argument at a later stage in litigation upon a fuller factual record. Defendant further argues that the notice of rescission was invalid because plaintiffs failed to provide the statutory basis for rescission. Defendant's argument lacks merit because the statute does not require the borrower to provide such information. Moreover, defendant's reliance on *Belini v. Washington Mutual Bank*, 412 F.3d 17, 27 n.6 (1st Cir. 2005), is unavailing because defendants did not suffer any prejudice since plaintiffs did in fact cite 15 U.S.C. § 1601 *et seq.* in their letter stating they wish to cancel. *See* Ex. H.

### A.     Applicability of the CLRA to plaintiffs' mortgage loan

Defendants Hilltop and Fieldstone contend that the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, does not apply to the mortgage loan at issue here. The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* at § 1760. A plaintiff may bring a claim under the CLRA when "any person" uses a statutorily prohibited trade practice "in a transaction . . . which results in the sale or lease of goods or services to any consumer." *Id.* at § 1770. Section 1761(a) provides "'Goods' means tangible chattels bought or leased for use primarily for personal, family, or household purposes . . ." The CLRA defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Id.* at § 1761(b). Finally, "'[c]onsumer' means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." *Id.* at § 1761(d).

The California Supreme Court has not addressed the question whether a mortgage loan, and the activities involved in receiving and maintaining one, falls within the CLRA's definition of a "good" or a "service." This Court must apply "California law as we believe the California Supreme Court would apply it." *In re K F Dairies, Inc. & Affiliates*, 224 F.3d 922, 924 (9th Cir. 2000). In similar matters involving financial transactions, the California Supreme Court and intermediate appellate divisions have found the CLRA applicable. *See Kagan v. Gibraltar Sav. & Loan Ass'n*, 35 Cal. 3d 582, 596-97 (Cal. 1984) (applying the CLRA to claims regarding management fees in connection with individual retirement accounts); *Corbett v. Hayward Dodge, Inc.*, 119 Cal. App. 4th 915 (Cal. Ct. App. 2004) (applying the CLRA to automobile loans); *but see Service Employees Ins. Co. v. Superior Court of San Francisco*, 22 Cal.3d 497 (Cal. 1978) (stating, in dicta, that insurance is not a "good" or "service" under the CLRA). Although the courts in *Kagan* and *Corbett* did not specifically discuss whether the financial transaction at issue fell under the CLRA's definition of a "good" or "service," both allowed the actions to proceed, assuming the CLRA did apply. *See Kagan*, 35 Cal. 3d at 587; *Corbett*, 119 Cal. App. 4th at 918.

Defendants rely on *Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224 (Cal. Ct.

8

1 App. 2007) and *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457 (Cal. Ct. App. 2006). In
2 *Berry*, the court analyzed whether the defendant's issuance of credit to the plaintiff constituted a
3 "service," as defined by the CLRA § 1761(b). *Berry*, 147 Cal.App.4th at 229. The court relied heavily
4 on the CLRA's legislative history[6] to find that extending a line of credit "separate and apart from the
5 sale or lease of any specific good or service falls outside the scope of section 1770." *Id.* at 232. In
6 *McKell*, the plaintiffs claimed that the defendants overcharged them "for underwriting, tax services, and
7 wire transfer fees in conjunction with home loans." *McKell*, 142 Cal. App. 4th at 1465. Finding that
8 the defendants' "actions were undertaken in transactions resulting in the sale of real property," rather
9 than "the sale or lease of goods or services," the court held the CLRA inapplicable to the facts of the
10 plaintiffs' case. *Id.* at 1488.

11 The Court finds neither *Berry* nor *McKell* persuasive, and concludes the California Supreme
12 Court would find that the CLRA does apply to the mortgage loans in the present case. In so holding,
13 the Court agrees with the reasoning of several other district courts that have addressed this issue. *See*
14 *Jefferson v. Chase Home Finance LLC*, No. C06-6510, 2007 WL 1302984, at *3 (N.D. Cal. May 3,
15 2007) (concluding that the loan transactions between a mortgage finance company and the plaintiff
16 involved "more than the provision of a loan; they also include [the] financial services [of managing the
17 loan]."); *Knox v. Ameriquest Mortgage Co.*, No. C05-00240, 2005 WL 1910927, at *4 (N.D. Cal. Aug.
18 10, 2005) (finding that, in the context of predatory lending allegations and after a review of the case law,
19 "California courts generally find financial transactions to be subject to the CLRA."); *In re Ameriquest*
20 *Mortgage Co.*, No 05-CV-7097, 2007 WL 1202544, at *6 (N.D. Ill. Apr. 23, 2007) (stating, in dicta, that
21 "it is not inconceivable that . . . plaintiffs could prove the existence of tangential 'services' associated
22 with their residential mortgages and establish that these transactions were covered by the CLRA.").

23 In *McKell*, the court provided little analysis on the broader question regarding applicability of
24 the CLRA to financial transactions, and instead relied largely on the fact that the plaintiffs cited no

---

[6]Early drafts of the CLRA defined "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods, services, *money, or credit* for personal, family or household purposes." *Berry*, 147 Cal. App. 4th at 230 (citing Assem. Bill No. 292 (1970 Reg. Sess.) Jan. 21, 1970) (emphasis added). The legislature provided no reasons for deleting "money" and "credit" from the definition of "consumer." *See id.* at 231.

9

authority and made no argument explaining how the defendants' actions fell under the CLRA. *See Jefferson*, 2007 WL 1302984, at *2 (finding *McKell* unpersuasive, stating "the court in *McKell* provided no analysis before reaching its conclusion that the CLRA did not apply."). Plaintiffs here, however, cite to various authorities and allege in their FAC that "[t]he arranging of the Hilltop/Fieldstone loan, including but not limited to its origination, processing, documentation, wire-transmittal and underwriting . . . constitutes 'services' within the meaning of subsection(b) of § 1761 of the CLRA . . ." FAC ¶ 65. Defendants contend that those services were not the objective of the transaction. However, plaintiffs did not seek just a loan; they sought defendants' services in developing an acceptable refinancing plan by which they could remain in possession of their home. FAC ¶ 24. Thus, unlike in *Berry*, the situation in the present case involves more than the mere extension of a credit line. Instead, the circumstances here deal not just with the mortgage loan itself, but also with the services involved in developing, securing and maintaining plaintiffs' loan. *See Hitz*, 38 Cal. App. 4th 274, 286-87 (Cal. Ct. App. 1995) (finding, in a non-CLRA context, that credit cards provide not only extensions of credit but also certain convenience features that constitute "services"). In fact, in an effort to create an appropriate refinancing package, plaintiffs met with defendants' agent three times before finally agreeing on a payment plan that plaintiffs and defendants found acceptable.

Defendants counter that had the loan failed, they would not have received any payments. However, plaintiffs allege that they made various payments to defendants solely in connection with pre-loan services. *See* FAC Ex. F. For instance, plaintiffs paid to defendant Hilltop a "Loan Origination Fee" of $5,100, a "Processing Fee" of $595.00, and an "Admin Fee" of $495.00; to Fieldstone, plaintiffs paid a "Tax Service" of $70.00, an "Underwriting Fee" of $695.00, and an "Application Fee" of $75.00. When combined with the Hilltop fees, plaintiffs paid a total of $7,030 to defendants. Furthermore, defendants did make the loan, meaning plaintiffs would continue to pay defendants for managing the loan. In sum, the Court concludes the CLRA is applicable to the facts alleged here because defendants' actions, advising plaintiffs and managing their loan, constituted "services" as defined by § 1761(b).

**B.     Notice and demand requirements of the CLRA**

Defendants contend that plaintiffs did not plead specific facts detailing compliance with the notice and demand requirements of § 1782 of the CLRA.[7] The complaint alleges that plaintiffs "have complied with the notice and demand requirements of the CLRA, as set forth in California Civil Code § 1782, in conjunction with filing this action." FAC ¶ 74. Defendants do not cite any authority requiring a complaint under the CLRA to contain more specific allegations, and the Court finds that plaintiffs have sufficiently alleged compliance.[8]

To the extent defendants contend that plaintiffs did not in fact comply with the notice and demand requirements, they may bring a motion directed at that issue.

**III.    Motion to dismiss plaintiffs' claims under the California Translation Act and common law fraud**

Defendant Countrywide argues that it cannot be held liable under the CTA or for committing fraud because it is merely the assignee of the loan. Countrywide relies on the fact that plaintiffs negotiated their loan agreement solely with Mr. Salem, an employee of Hilltop, not Countrywide. Thus, Countrywide argues that it cannot be held liable for violations in which it did not participate. However,

---

[7]Section 1782(a) provides:
(a) Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:
   (1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.
   (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.
The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California.

[8]Defendants cite only cases that determine the necessary level of compliance with § 1782 after the pleadings stage. *See Outboard Marine Corp. v. Superior Court of Sacramento*, 52 Cal. App. 3d 30, 40 (Cal. Ct. App. 1975) (rejecting plaintiff's argument that "substantial compliance only is required by § 1782 . . . and that a technicality of form should not be a bar to the action."); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003) (citing *Outboard Marine* and holding a claim for damages under the CLRA requires strict adherence to the provisions of § 1782); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005) (same).

11

1 the Court concludes that the plaintiffs have, as a pleading matter, sufficiently alleged that
2 Countrywide's connection with Hilltop and Fieldstone justifies viewing Countrywide, the assignee, as
3 the original creditor, and that an agency relationship may exist between Countrywide and other
4 defendants.

5 Although neither party cites any authority on this question, the Court finds *LaChapelle v. Toyota*
6 *Motor Credit Corp.*, 102 Cal. App. 4th 977 (Cal. Ct. App. 2002), instructive. In *LaChapelle*, the
7 plaintiff sought rescission of a car lease agreement, alleging the transaction violated various consumer
8 protection acts, including the Vehicle Leasing Act (VLA). *Id.* at 980. The plaintiff brought her causes
9 of action not only against the dealer but also against the company to whom the lease was assigned. In
10 deciding whether the plaintiff could bring a claim against the assignee, the court held that "[t]he validity
11 of such an argument turns on the facts in any particular case, i.e., whether an assignee's connection with
12 the original purchase or lease transaction is so close as to justify viewing the assignee as the original
13 creditor." *Id.* at 983. Observing that the plaintiff failed to state any facts to connect the assignee with
14 the original creditor, the court affirmed summary judgment on the plaintiff's VLA claim. *Id.* Unlike
15 the plaintiff in *LaChapelle*, plaintiffs here allege that Countrywide may have been involved with the
16 doctoring of the dates on the notices of the right to cancel forms. Furthermore, the Court finds that the
17 time proximity between the closing of the escrow and Fieldstone's assignment of the loan to
18 Countrywide, approximately one month, supports a possible connection between these two defendants.

19 Additionally, an agency relationship between Countrywide and the other defendants, Hilltop and
20 Fieldstone, may exist such that Countrywide could be indirectly liable for Hilltop and Fieldstone's
21 violation of the CTA and fraudulent misrepresentations. Although the plaintiffs do not allege an agency
22 relationship between Countrywide and the other defendants in their complaint, it is not necessary for
23 a pleading to allege an agency relationship in order to survive a Rule 12(b)(6) motion.[9] "[A]s a matter
24 of law, allegations of agency, vicarious liability, and/or respondeat superior are not required. A person
25 legally responsible for an act may be alleged to have committed it without going into the theories which

---

27 [9]Countrywide's reliance on *Ruiz v. Decision One Mortgage Co., LLC.*, No. C06-02530, 2006 WL
28 2067072 (N.D. Cal. 2006), is unavailing. Countrywide misstated the law in *Ruiz*, falsely inserting a requirement for an allegation of an agency relationship in an indirect liability claim.

support that ultimate fact." *Greenberg v. Sala*, 822 F.2d 882, 886 (9th Cir. 1987); *see also Fed. Sav. and Loan Ins. Corp. v. Shearson Am.*, 658 F. Supp. 1331, 1343 (D.P.R. 1987) (holding that a party can be held liable for securities fraud on an agency or a respondeat superior theory).

### IV.  Ameriquest's motion to dismiss plaintiffs' claims based on lack of subject matter jurisdiction

Defendant Ameriquest moves to dismiss all claims pending against it based on lack of subject matter jurisdiction. Plaintiffs allege only state law claims against Ameriquest. However, plaintiffs argue the Court may exercise supplemental jurisdiction over the claims pursuant to 28 U.S.C. § 1367(a). The Supreme Court has held that in order for state law claims to remain in federal court, "[t]he state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Congress codified this holding in 28 U.S.C. § 1367(a), which provides that when district courts have original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Once a district court decides the state claims derive from the same operative facts, it possesses discretion to determine whether to deny exercising supplemental jurisdiction. *See Gibbs*, 383 U.S. at 726 (holding a district court's application of supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("As articulated by *Gibbs*, the doctrine of [supplemental] jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving [supplemental] claims in the manner that most sensibly accommodates a range of concerns and values.").

In the instant case, the Court finds that plaintiffs' claims against Ameriquest do not share a common nucleus of operative facts from which their claims against other defendants arise. Although Ameriquest and the other defendants face similar state court claims and the scenarios of both loans are similar, the claims arise out of two different instances. As defendant Ameriquest correctly observes, negotiations for the Ameriquest loan and the Hilltop/Fieldstone loan took place nearly a year apart from each other. Additionally, aside from plaintiffs, no same persons participated in both transactions. The

two loans were separate and distinct acts, each involving their own set of unique facts. Accordingly, the Court declines to exercise supplemental jurisdiction over plaintiffs' state claims against Ameriquest, and GRANTS Ameriquest's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES the motions to dismiss of defendants Hilltop, Fieldstone, and Countrywide (Docket Nos. 23, 29, and 31), and GRANTS defendant Ameriquest's motion to dismiss. (Docket No. 17).

**IT IS SO ORDERED.**

Dated: October 22, 2007

SUSAN ILLSTON
United States District Judge